HOUSTON & T. C. RY. CO. v. KEELING.

(Court of Civil Appeals of Texas. El Paso. Dec. 14, 1911. On Motion for Rehearing, Jan. 10, 1912.)

1. CARRIERS (§ 280*)—INJURY TO PASSENGER —MAIL CLERK.

The care which a carrier of passengers is required to use is that which a very cautious, prudent, and competent person would exercise under the same circumstances.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1085–1092, 1098–1106; Dec. Dig. § 280.*]

2. CARRIERS (§ 316*)—INJURY TO PASSENGER — MAIL CLERK — PRESUMPTION OF NEGLIGENCE.

Where plaintiff, a mail clerk on defendant's train, was injured while attempting to alight at what he believed was the final stop of the train by a sudden movement thereof without warning, plaintiff being a passenger, there was a

presumption arising from the circumstances surrounding the accident that defendant was negligent.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1283–1294; Dec. Dig. § 316.*]

3. CARRIERS (§ 320*)—PASSENGER—EVIDENCE.

Where, in an action for injuries to a passenger by the sudden starting of a train as he was attempting to alight, plaintiff and another witness testified that they heard no bell or warning given of the contemplated starting of the train, evidence of two members of the crew that to the best of their knowledge warning was given by the ringing of the bell after the train had made its first stop, and did not move after making its final stop, did not establish, as a matter of law, that the warning was given.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 320.*]

4. CARRIERS (§ 320*) — INJURY TO PASSENGERS — CARE REQUIRED — QUESTION FOR JURY.

Where a passenger train was stopped to open a crossing before making its final stop, and plaintiff, a mail clerk, was injured while attempting to alight either at the first or final stop by a sudden movement of the train without warning, whether the care required of the carrier required it to see that no person was about to leave the train before starting the same was for the jury.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 320.*]

On Rehearing.

5. CARRIERS (§ 320*)—INJURY TO PASSENGERS—TIME TO ALIGHT—SUDDEN MOVEMENT OF TRAIN.

A sudden movement of the train after having reached its final stop without warning, causing a mail clerk to fall therefrom and sustain injuries, is sufficient to raise an issue of actionable negligence against the carrier.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 320.*]

Appeal from Harris County Court; A. E. Amerman, Judge.

Action by G. A. Keeling against the Houston & Texas Central Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

See, also, 121 S. W. 597.

Baker, Botts, Parker & Garwood and Lane, Wolters & Storey, for appellant. F. F. & E. T. Chew and M. G. Fakes, for appellee.

PETICOLAS, C. J. This suit originated in the county court of Harris county, Tex., and was for damages for personal injuries claimed to have been received by a railway mail clerk who ran between Houston and Denison in attempting to alight from his car at Denison. The evidence shows that on arrival of the Houston & Texas Central train at Denison there were usually two stops; that is to say, the train was stopped a little short of the depot, about 25 feet from it, in order to cut off one or more of the rear coaches to leave open a public crossing, the train moved on into the station, a truck was run up to the mail car, the mail was unloaded thereon, and carried on the truck across the station to the Missouri, Kansas & Texas Rail-

way. The case has been heretofore appealed, as will be later adverted to, and the difficulty that has been found in the case arises from testimony indicating that the stop made at the time the plaintiff was injured was not the final stop, but was the stop for the purpose of cutting off the cars; that nevertheless the mail truck was brought up to the mail car, and the plaintiff was thereby induced to believe that it was the final stop, and in attempting to alight from the car, the train being suddenly moved again, he was injured.

The suit was originally brought against the Houston & Texas Central Railway Company and the Missouri, Kansas & Texas Railway Company. See 51 Tex. Civ. App. 386, 112 S. W. 808. It was reversed and rendered as to the Missouri, Kansas & Texas Railway Company, against whom liability was predicated by the petition on the fact that the employé operating the mail truck, one Hubbard, did not warn plaintiff of the danger. The Court of Civil Appeals, as stated, reversed and rendered it as to the Missouri, Kansas & Texas, for the reasons that Keeling, the plaintiff, was not a passenger on the Missouri, Kansas & Texas Railway, and Hubbard, the servant of the Missouri, Kansas & Texas Railway Company owed him no duty. That court also reversed the case as to the Houston & Texas Central because the trial court had used in its charge, as measuring the carrier's duty, the expressions: "A high degree of care," and "utmost care." Afterwards, apparently on motion for rehearing, the question arising on said charge was certified to the Supreme Court (reported 102 Tex. 521, 120 S. W. 847), and the Supreme Court, while criticising the expressions used in the charge, held them sufficient. Nevertheless on return to the Court of Appeals (121 S. W. 597) the case was reversed as to the Houston & Texas Central Railway Company on another ground, the court holding that as appellee testified that he knew there were two stops, one the "cutting stop" and one the final stop, and was induced to believe by the mail truck being there that it was the final stop, and as the mail transfer man, Hubbard, was in the employ of the Missouri, Kansas & Texas Railway Company, he could not be held to be an agent of the Houston & Texas Central, and, as there was no evidence that any employé of the Houston & Texas Central Railway Company saw plaintiff as he attempted to alight, therefore no negligence, from all the circumstances, could arise as against the Houston & Texas Central Railway Company from the testimony.

We find ourselves unable to agree to the correctness of this last-mentioned decision. The allegations of plaintiff's petition were substantially as follows: That plaintiff was a passenger on defendant's railway, the Houston & Texas Central. That customarily the

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

train stopped at final stop; that the mail truck was pushed up to the car, the mail unloaded, and it was transferred to the Missouri, Kansas & Texas; the Houston & Texas Central train remaining where it was until some hours later. It was alleged that employés of both roads operated the mail truck, and that such servants were servants of both roads. It was alleged that the accident happened on the final stop, or at a stop which plaintiff was induced to believe was the final stop by the action of the truckman. It was alleged that the car had no end doors; that plaintiff must alight from the side door; that he was stepping out of said door on to said truck when the train, through defendant's negligence, was suddenly and violently moved; that defendant knew, or ought to have known, that plaintiff would leave the car, their failure in this respect being alleged as negligence; that the defendant failed to warn plaintiff in any manner that it was about to move said train, and this was negligence. The charge of the court, in so far as it is material in this connection, was as follows: "In the discharge of his duty he (plaintiff) had no control or management of said train, and the defendant, its agents and servants, owed him the highest degree of care to prevent his injury while in the operation of said train, said degree of care being defined as such as would be used by very cautious, prudent, and competent persons in the same line of business under like or similar circumstances. A failure to use such a high degree of care in the operation of said train so as to prevent injury to plaintiff would be negligence. If you believe from the evidence that the plaintiff was injured substantially as alleged by the plaintiff, and that said injury was proximately caused through the negligence of the defendant, you will find for the plaintiff. In this connection you are charged that if you believe that the defendant, its agents or employés, knew or should have known, in the exercise of the care as above defined which the defendant owed, plaintiff was about to leave said car in the discharge of his duty in the usual and customary manner, and that, notwithstanding said knowledge, moved said car while the plaintiff was alighting from the same, and, if you find that the moving of said car was negligence as hereinbefore defined, you will find for the plaintiff, unless you believe that the plaintiff was guilty of negligence in alighting from said car at the time, and in the manner in which he alighted, and that such negligence contributed to plaintiff's injury." The defendant pleaded assumed risk and contributory negligence, and these issues were submitted.

It is unnecessary, we believe, to state a great deal of the testimony, but such as is material to our questions is as follows: Keeling testified to the customary way of taking the mail out on the truck and to the two stops mentioned. "On the occasion of my being injured, I think the truck was placed along side of the train and the mail loaded on it before the train made its final stop. When I went to get out of that car, I had every reason to believe that the car had come to a final stop. The man had come and got the mail, and I supposed that the final stop had been made. This man, Hubbard, who had charge of the truck at the time I was injured, transferred mail for the Missouri, Kansas & Texas and for the Houston & Texas Central. His duty when the H. & T. C. train came into the depot was to take the truck, which was an H. & T. C. truck, and take the mail of the H. & T. C. train to the M., K. & T. train, and, when an M., K. & T. train came into the depot, he would take the M., K. & T. truck and take the M., K. & T. mail to the H. & T. C. train. I do not know who employed him. I only know the kind of work he did at the depot." He also testified, as did W. A. Primm: "I never heard any signal or ringing of the bell at the time the train started to move, nor was any warning whatever given." Manning, the engineer, testified for defendant of the two stops, and that on this particular night he had no recollection of having moved the train after they came to the second stop. "We always ring the bell before we move a train at any station. We did it on the occasion in controversy. I have no independent recollection about the night mentioned, nothing in particular. It is customary to ring the bell before moving a train after coming to a stop. I did not know at the time I moved the train about that truck being there. I got signals from different persons, sometimes the brakeman, sometimes the conductor, or porter. They were there somewhere. I cannot locate them." Martin, the fireman, testified to the two customary stops, and said that they never moved the train after coming to the final stop; that he knows all signals to move up are given from both sides at times. "We always give a warning before moving the train. We always ring the bell." Hubbard, the mail transfer man, testified to the two stops, and that in the particular instance he took the mail off at the last stop. "On the night in question the mail was taken off at the usual place. That was after the train came to the second stop. There was no movement of the train when I was taking the mail off, not more than ten inches or a foot. I saw Keeling on that night. I do not remember anything he did on that night, other than to get off and deliver his registers to the Katy train going north."

[1] The care which a carrier of passengers is required to use is that "which a very cautious, prudent and competent person would exercise under the same circumstances." To our minds it is unnecessary to decide whether Hubbard was charged with any duty to H. & T. C. passengers or not. We reach this conclusion in this way: (a) Plaintiff was a

passenger. (b) In addition to the allegations charging Hubbard with negligence, it was also alleged that the train was suddenly started without warning. (c) It was alleged that defendant knew, or ought to have known, that plaintiff was about to alight.

Here are two grounds of negligence alleged besides Hubbard's failure to warn.

The issuable testimony on these subjects, using the same subparagraphs to indicate the applicability of the testimony, was as follows:

[2] (a) Plaintiff being a passenger gives rise to a presumption on negligence.

[3] (b) Plaintiff testified that the train was suddenly moved, and he and Primm testified that they heard no bell and no warning was given. Two of the train crew testified that to the best of their knowledge the warning was given by ringing bell after the "cutting stop," and that the train did not move after final stop. But no other members of the train crew testified. Testimony of two only of the train crew would not establish as a matter of law that warning was given.

(c) Although plaintiff testified that the accident was at the first stop, Hubbard testified that it was at the final stop that he took off the mail and that the train did not move more than a foot or two.

If it was at the final stop, the jury might well believe that defendant ought to have known that plaintiff would leave car.

We have tried above to indicate clearly where the issuable facts in the case are.

[4] Whether the accident was at the first or final stop, the defendant must still have used the care "which a very cautious, prudent and competent person would use under similar circumstances." Transit Co. v. Strong, 108 S. W. 396; Railway Co. v. Dykes, 45 S. W. 758. Whether such care would require the defendant to see to it that no person was about to leave the train was for the jury to determine in either instance. Indeed, if the verdict could not be supported on any other ground, we would, we think, be required to presume under Hubbard's testimony that the jury found that the accident happened at the final stop. As stated, we do not believe it necessary to decide whether this defendant would be liable for Hubbard's neglect or not.

The allegations are sufficient to admit proof of the other grounds of negligence alleged, the testimony was sufficient to raise issues of fact as to these matters, the charge of the court was sufficient, the jury found for plaintiff, and the case is therefore affirmed.

### On Motion for Rehearing.

The motion for rehearing is overruled, as is also the appellant's motion to certify the case to the Supreme Court. We deem it due, however, to counsel for appellant to state

why we refuse their motion to certify the case.

[5] As stated in the original opinion, Hubbard, the mail truck transfer man, testified positively that the stop made the night that Keeling got hurt was the final stop, and not the cutting stop. Under all the testimony, if it was the final stop, an issue of negligence was raised against the defendant. In the case as reported in 121 S. W. 597, the court lays emphasis upon the fact that the stop in question was not the final stop. The only way that we can know what facts the court had before it in that record is in so far as we may be able to gather them from the opinion as reported, and from what has been stated it would seem apparent that in that case the Court of Civil Appeals rendering the decision adverted to did not have before it Hubbard's testimony that it was the final stop. In the instant case Keeling testified: "On the occasion of my being injured, I think the truck was placed along side of the train and the mail loaded on it before the train made its final stop." And the allegations are that the accident happened on the final stop, or at a stop which plaintiff was induced to believe was the final stop.

The matter stated above indicates clearly to our minds that the testimony in the record on this trial is different from what it was at the time the former decision was rendered in the Court of Appeals, principally in Hubbard's testimony that he unloaded the mail at the final stop. Therefore we think our broad statement in our opinion that we find ourselves unable to agree to the correctness of the decision in 121 S. W. 597, is perhaps inaccurate, and we will confine ourselves to holding that in this case, as the record is presented to us, the evidence was sufficient to raise the issue of negligence.